1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8   JEFFREY P.,

9                              Plaintiff,              Case No. C24-5262-SKV

10        v.                                           ORDER REVERSING THE
                                                       COMMISSIONER'S DECISION
11   COMMISSIONER OF SOCIAL SECURITY,

12                              Defendant.

13

14          Plaintiff seeks review of the denial of his application for Supplemental Security Income

15   (SSI).  Having considered the ALJ's decision, the administrative record (AR), and all

16   memoranda of record, the Court **REVERSES** the Commissioner's final decision and

17   **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C.

18   § 405(g).

19                                      **BACKGROUND**

20          Plaintiff was born in 1976, has a high school education, and has worked as a sales person

21   and contractor.  AR 34.  Plaintiff was last gainfully employed prior to the protective filing date.

22   AR 21.

23

ORDER REVERSING THE COMMISSIONER'S
DECISION - 1

In February 2020, Plaintiff applied for SSI, alleging disability since December 2019. AR 204.  Plaintiff did not appeal after this application was denied at the initial level in June 2020.  AR 18.  However, in December 2021, Plaintiff filed a new SSI claim alleging the same onset date in December 2019.  AR 343-52.  Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing.  AR 239.  After the ALJ conducted a hearing in December 2023, the ALJ issued a decision finding Plaintiff not disabled.  AR 15-41.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**:  Plaintiff has not engaged in substantial gainful activity since December 2021.

**Step two**:  Plaintiff has the following severe impairments: patent foramen ovale (PFO), history of embolism and transient ischemic attack (TIA), right eye melanoma, radiculopathy, knee abnormality, vision abnormality, carpal tunnel syndrome (CTS), degenerative disc disease, major depressive disorder (MDD), posttraumatic stress disorder (PTSD), neurocognitive disorder, and adjustment disorder.

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity (RFC)**:  Plaintiff can perform light work that does not require more than occasional climbing of ramps or stairs; that does not require more than frequent handling, fingering, feeling, or overhead reaching; that does not require right side vision; that does not require more than occasional depth perception; that does not require concentrated exposure to vibration, pulmonary irritants, or extreme temperatures; that does not require exposure to hazards; that consists of simple instructions; that is the same tasks over and over; that does not require more than routine interaction (such as "good morning" or "here is the item") with the general public; and that does not require more than occasional adaptation to changes.

**Step four**:  Plaintiff cannot perform past relevant work.

**Step five**:  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 20-21, 24, 34.

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 1-6.  Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 4.  The parties consented to proceed before the undersigned Magistrate Judge.  Dkt. 2.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted).  The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

Substantial evidence is "more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id*.

1

**DISCUSSION**

2      Plaintiff argues the ALJ erred by rejecting his testimony and misevaluating medical

3 source statements from Dr. Hulse, Dr. Wingate, Dr. Losee, and PAC Gonzales, resulting in a

4 flawed RFC assessment; as relief, Plaintiff argues the Court should remand for benefits.  Dkt. 9.

5 The Commissioner argues the ALJ's decision is free of harmful legal error, supported by

6 substantial evidence, and should be affirmed.  Dkt. 14.

7      **A.      The ALJ Erred in Evaluation of Medical Opinions**

8      The applicable regulations require the ALJ to articulate the persuasiveness of each

9 medical opinion and assess whether those opinions are supported by and consistent with the

10 record.  20 C.F.R. § 416.920c(a)-(c).  These findings must be supported by substantial evidence.

11 *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

12          *1.      PAC Omar Gonzales*

13      In December 2022, consultative examiner PAC Gonzales opined that Plaintiff has the

14 ability to stand or walk for a cumulative 30 minutes to 2 hours, no more than 15 to 45 minutes at

15 a time; his sitting is similarly restricted to 30 minutes to 2 hours, lasting 30 to 60 minutes.  PAC

16 Gonzales also noted that Plaintiff has no ability to balance or climb stairs, and his lifting and

17 carrying capacity is limited to 10 pounds occasionally and 3 to 7 pounds frequently.  Finally,

18 Plaintiff could only occasionally—from very little to one-third of the time—perform tasks

19 requiring gripping, handling, fingering, feeling, or manipulation.  AR 743-44.

20      The ALJ rejected PAC Gonzales' opinion, stating that his diagnosis of osteoarthritis in

21 Plaintiff's knees was unsupported by the record and that as a physician's assistant, Gonzales was

22 not qualified to render such a diagnosis.  AR 31.  As an initial matter, the ALJ's own finding that

23 Plaintiff has a severe impairment of a "knee abnormality" undermines his dismissal of PAC

1   Gonzales' diagnosis.  AR 21.  Moreover, the ALJ's summary dismissal of PAC Gonzales'

2   assessment of Plaintiff's functional limitations overlooks the requirement that an ALJ articulate

3   whether each medical source statement is supported and consistent with the record.[3]  *See Woods*,

4   32 F.4th at 792.

5          The ALJ's rationale for rejecting PAC Gonzales' opinion also misstates the record by

6   suggesting that the examiner based his findings solely on Plaintiff's subjective complaints, which

7   were unsupported by clinical evidence.  AR 31.  However, PAC Gonzales' medical exam

8   revealed numerous objective findings that corroborate his opinion.  AR 735-736.  These include

9   observations of Plaintiff being in visible pain during activities, an unsteady and antalgic gait,

10  inability to heel-toe walk due to unsteadiness, difficulty squatting, and significant difficulty with

11  hand and finger movements.  PAC Gonzales' physical exam also noted "palpable crepitus" in the

12  knees, a clinical sign consistent with osteoarthritis.  The exam further noted reduced light touch

13  sensation in Plaintiff's fingertips, positive Phalen's and Tinel's signs, severe shoulder pain, and

14  reduced sensation in Plaintiff's hands and neck, consistent with radicular symptoms.

15         These objective findings support PAC Gonzales' opinion regarding Plaintiff's limited

16  functional abilities.  Contrary to the ALJ's assertion, PAC Gonzales did not base his opinion

17  solely on Plaintiff's subjective complaints but rather on comprehensive clinical evidence

18  obtained through the physical exam.

19  \\\

20

21  _____

    [3] PAC Gonzales' evaluation was consistent with Dr. Gibbs treatment note from May 2022, which
22  documents Plaintiff's chronic bilateral knee pain, worse on the right side, with pain localized in the
    patellofemoral joint.  Dr. Gibbs noted Plaintiff's knees "pop and buckle" when turning, and that he had
23  ceased hiking in 2017 due to debilitating knee pain.  AR 789.  Dr. Gibbs suspected osteoarthritis and
    discussed treatment options, including an x-ray, physical therapy, and steroid injections.  AR 790.  A
    subsequent x-ray done on June 20, 2022, confirmed patellar degenerative spurring, which supports the
    osteoarthritis diagnosis.  AR 917.

1          2.      *Dr. Elwyn Hulse*

2          In May 2022, Dr. Hulse evaluated Plaintiff and concluded that he had "problems

3   persisting at basic life tasks," was unable to access necessary resources, struggled to sustain

4   concentration, and exhibited reasoning abilities limited to a very simplistic level.  Dr. Hulse

5   observed that Plaintiff was dressed in dirty clothes, had not brushed his teeth, demonstrated

6   psychomotor agitation, and exhibited impaired recall memory.  Dr. Hulse's overall assessment

7   was that Plaintiff was severely impaired, with marginal functional concentration and abstract

8   thinking, and a limited ability to adapt or set realistic goals.  AR 704-08.

9          The ALJ found Dr. Hulse's opinion unpersuasive, citing Plaintiff's ability to manage his

10  finances, ask appropriate questions during treatment, and follow a shopping list.  AR 32-33.  But

11  the ALJ must do more than disagree with the physician's conclusions.  The ALJ is required to

12  offer specific, reasoned interpretations and explain why they are more accurate than the

13  physician's.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  The ALJ's brief

14  reference to Plaintiff's ability to manage finances and follow a shopping list does not sufficiently

15  address Dr. Hulse's findings, which describe substantial functional impairments.

16         Additionally, the ALJ improperly rejected Dr. Hulse's opinion by relying on vague

17  therapy notes that described Plaintiff as "intelligent" with a "fountain of knowledge."  AR 32-33.

18  These generalized observations, from therapy sessions aimed at helping Plaintiff manage

19  negative triggers, do not refute Dr. Hulse's detailed and specific findings regarding Plaintiff's

20  impairments.  AR 1445-46, 1449.

21         3.      *Dr. Melinda Losee*

22         In October 2022, Dr. Losee evaluated Plaintiff and found that his memory and

23  concentration were severely impaired.  She also noted that Plaintiff's depression and anxiety

significantly affected his motivation, interest in activities, desire to socialize, and ability to be in public. AR 718-22. The ALJ found Dr. Losee's opinion unpersuasive because it was overly vague and inconsistent with the record. AR 33.

Contrary to the ALJ's characterization, Dr. Losee's evaluation included detailed findings showing severe impairments in Plaintiff's auditory memory skills, as well as his overall, immediate, and delayed memory skills. Plaintiff's ability to recall visually or orally presented material was also extremely low. Dr. Losee concluded that these impairments, compounded by Plaintiff's depression and anxiety, severely limited his ability to sustain attention, follow detailed instructions, learn new tasks, and adapt to changes. AR 722. These specific findings contradict the ALJ's assertion that Dr. Losee's opinion was vague. *See Reddick*, 157 F.3d at 722-23.

The ALJ also erred by dismissing Dr. Losee's opinion based on perceived inconsistencies with Dr. Hulse's observations. As discussed, the ALJ's rejection of Dr. Hulse's opinion was not supported by substantial evidence. In fact, Dr. Hulse's findings of significant limitations in Plaintiff's concentration and reasoning align with Dr. Losee's assessment, further supporting the credibility of her opinion.

### 4.    Dr. Terilee Wingate

In September 2023, Dr. Wingate identified marked limitations in Plaintiff's ability to perform tasks requiring adherence to a schedule, maintain regular attendance, and complete a normal workday without psychological disruptions. Dr. Wingate also noted that Plaintiff had marked limitations in maintaining appropriate behavior in a work setting. AR 1504-05. The ALJ found Dr. Wingate's opinion unpersuasive because it was unsupported and inconsistent with her generally normal findings. AR 33-34.

The ALJ's dismissal of Dr. Wingate's opinion is inconsistent with the record.  Dr. Wingate reviewed Plaintiff's medical records, conducted a clinical interview, and performed a detailed assessment of Plaintiff's functional limitations.  She noted that Plaintiff exhibited impaired memory, a dysphoric mood, and a blunted affect.  AR 1502-06.  Dr. Wingate also observed that while Plaintiff was cooperative during the exam, he displayed obvious pain and had difficulty recalling basic facts, such as the name of the Governor of Washington.  Despite these impairments, the ALJ selectively referenced observations of normal behavior, such as Plaintiff's ability to name the President and Vice President, to reject Dr. Wingate's findings. AR 33-34.

Although the ALJ cited treatment notes reflecting normal mood, affect, speech, and behavior, AR 785, 796, 800, 821, 825, 1222, 1227, these observations must be understood within the broader diagnostic picture drawn by the provider.  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).  Here, the cited notes concerned Plaintiff's physical impairments, and Plaintiff's occasionally appropriate behavior during physical appointments is not a valid basis to reject Dr. Wingate's psychiatric evaluation.  A person may exhibit "occasional symptom-free periods" yet remain unable to function in a work environment.  *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995).

### B.    The ALJ Erred in the Evaluation of Plaintiff's Testimony

Absent evidence of malingering, an ALJ is required to provide "clear and convincing reasons" to discount a claimant's testimony.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 37 (9th Cir. 2014).  This requires the ALJ to specify which parts of the testimony are not credible and what evidence contradicts them.  *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017).  While the ALJ is not required to accept every claim or evaluate testimony line by line, the rationale must be

1    clear enough "that it has the power to convince."  *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir.

2    2022); *see also Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021); *Lambert v. Saul*, 980 F.3d

3    1266, 1277 (9th Cir. 2020).

4        In this case, the ALJ found Plaintiff's testimony unpersuasive, citing inconsistencies with

5    the overall record.  AR 25-30.  Plaintiff contends that substantial evidence does not support the

6    ALJ's decision.  Dkt. 9 at 11.  The Court agrees.

7        The ALJ rejected Plaintiff's testimony regarding his right peripheral vision issues, stating

8    that medical records from 2019 showed visual field problems, but later records indicated full

9    visual fields.  AR 26.  However, these records come from a neurology visit unrelated to

10   Plaintiff's vision issues.  AR 793-94.  Moreover, those same treatment notes confirm Plaintiff's

11   right eye blindness and ocular melanoma.  This deficiency is reflective of broader errors in the

12   decision.  In 2019, Plaintiff developed a tumor in the center of his right eye.  AR 687.  While

13   Plaintiff experienced some temporary improvement after surgery in September 2019, by

14   December 2019, he had lost all vision in his right eye.  AR 678.  In January 2023, Plaintiff's

15   right eye was removed entirely.  AR 1191.  Thus, the ALJ's conclusion that Plaintiff's peripheral

16   vision had improved—despite missing his eye—lacks any support.

17       The Commissioner argues that the ALJ was addressing Plaintiff's general problems with

18   vision in his left eye.  Dkt. 14 at 5-6.  But the ALJ did not mention Plaintiff's left vision until

19   after discussing Plaintiff's "full visual fields."  AR 26.  As such, the Court declines the

20   Commissioner's invitation to manufacture the ALJ's findings as to this reason.  *See Kaufmann v.*

21   *Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022); *Makenzie M. v. Comm'r of Soc. Sec.*, 2022 WL

22   2817086, at *1 (W.D. Wash. July 19, 2022).

23

1       The ALJ also discounted Plaintiff's testimony based on perceived inconsistencies

2   between his statements and the record, citing that Plaintiff occasionally appeared in pain, gave

3   inconsistent accounts of when he stopped working, and testified to limitations that were not

4   documented by medical providers.  Specifically, the ALJ referenced Plaintiff's testimony that

5   cancer would be fatal within five years, that his knee randomly gives out causing falls, that he is

6   bedridden once a week from pain, that he suffers from significant panic attacks, and that anxiety

7   medication causes grogginess.  AR 25-30.  However, none of these findings directly contradict

8   Plaintiff's testimony.  Plaintiff's difficulties with recalling dates align with his testimony

9   regarding impaired memory.  *Beneke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("Sheer

10  disbelief is no substitute for substantial evidence.").  The Ninth Circuit has consistently

11  recognized that disability often involves "cycles of improvement and debilitating symptoms,"

12  and short periods of improvement do not indicate an ability to maintain work.  *Garrison v.*

13  *Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).  As such, the ALJ's focus on isolated instances of

14  improvement or minor inconsistencies is insufficient to discount Plaintiff's testimony.

15      The ALJ further erred by concluding that Plaintiff's activities undermined his claimed

16  limitations in concentration and persistence.  While daily activities can be relevant to evaluating

17  symptom testimony, a claimant "does not need to be utterly incapacitated to be disabled."

18  *Beneke*, 379 F.3d at 594.  Contrary to Plaintiff's testimony about difficulty reading and a lack of

19  hobbies, the ALJ noted that Plaintiff reported spending time reading, listening to podcasts and

20  audiobooks, grocery shopping, and planning menus.  AR 30.  The ALJ also highlighted

21  discrepancies in Plaintiff's reports, observing that Plaintiff told Dr. Hulse he could only read for

22  five to ten minutes but told Dr. Losee that he reads for less than an hour.  AR 707, 719.

23  However, the ALJ failed to explain how these limited activities conflicted with Plaintiff's

ORDER REVERSING THE COMMISSIONER'S
DECISION - 10

1    testimony or indicated an ability to perform work-related tasks.  *See Revels v. Berryhill*, 874 F.3d

2    648, 668 (9th Cir. 2017).  The fact that Plaintiff reported reading for less than an hour a day,

3    listening to podcasts and audiobooks, and occasionally grocery shopping are not clear and

4    convincing reasons for rejecting his testimony.

5            **C.      Prior Application**

6            An ALJ may reopen a prior determination for good cause within two years from the date

7    of notice of the initial determination.  HALLEX I-2-9-40.  Good cause exists when new and

8    material evidence is provided, a clerical error has occurred, or the evidence that formed the basis

9    of the decision clearly shows an error.  *Id.*

10           Plaintiff contends the ALJ erred by failing to reopen his prior application based on new

11   and material evidence, particularly regarding his cancer diagnosis and ongoing treatment.  Dkt. 9

12   at 15-16.  The ALJ recognized that Plaintiff's alleged onset date of December 2019 overlapped

13   with the period covered by the prior application.  After reviewing the record, however, the ALJ

14   declined to reopen the earlier application and confined the analysis to the period starting in

15   December 2021, the protective filing date of the current application.  The ALJ emphasized that

16   although he reviewed the evidence "for historical understanding," he ultimately found "no good

17   cause to reopen the prior determination." AR 18.

18           The Commissioner argues that the ALJ's action was discretionary and is therefore not a

19   "final decision" of the Commissioner that is subject to judicial review.  Dkt. 14 at 16.  The Court

20   agrees.  The Supreme Court has held that an ALJ's decision not to reopen a prior application is

21   generally not reviewable by federal courts, except where a colorable constitutional claim is

22   raised.  *See Califano v. Sanders*, 430 U.S. 99, 109 (1977); *see also Klemm v. Astrue*, 543 F.3d

23   1139, 1144 (9th Cir. 2008).  Plaintiff has not alleged such a claim, nor has he responded to the

1    Commissioner's arguments regarding the Court's lack of jurisdiction.  However, as this case is

2    being remanded for further proceedings on other grounds, Plaintiff may reassert arguments

3    regarding reopening at the remand hearing.

4         **D.    Proper Remedy is Remand for Further Proceedings**

5         Remand for an award of benefits "is a rare and prophylactic exception to the well-

6    established ordinary remand rule."  *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017).

7    Where conflicting evidence and essential factual issues remain unresolved, remanding for an

8    award of benefits is inappropriate.  *See Treichler v. Colvin*, 775 F3d 1090, 1106-07 (9th Cir.

9    2014).  Here, the Court finds that further proceedings are required to resolve conflicts in the

10   overall record.  *See*, *e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008) ("the

11   ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence"); *Fair v.*

12   *Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) ("we are not triers of fact").

13                              **CONCLUSION**

14        For the reasons set forth above, the Commissioner's final decision is **REVERSED** and

15   this case is **REMANDED** for further administrative proceedings under sentence four of 42

16   U.S.C. § 405(g).  On remand, the ALJ shall reevaluate Plaintiff's testimony and the medical

17   evidence of record, offer Plaintiff a new hearing, take into consideration any other evidence

18   submitted or arguments relevant to Plaintiff's disability claim, and proceed to the remaining

19   steps of the disability determination process as appropriate.

20        Dated this 27th day of September, 2024.

21

22                                    S. KATE VAUGHAN
                                      United States Magistrate Judge
23

ORDER REVERSING THE COMMISSIONER'S
DECISION - 12